```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA         :

        - v. -                   :     SENTENCING MEMORANDUM

SAMUEL BARROLLE,                 :     07 Cr. 342-01 (WHP)

        Defendant.               :

- - - - - - - - - - - - - - - - - x
```

July 29, 2008

William H. Pauley III
U.S. District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Pauley:

    I write on behalf of my client, Samuel Barrolle, in anticipation of his sentencing, which is scheduled for August 8, 2008. For the reasons set forth below, I urge the Court to impose a term of five years of probation with a substantial community service requirement. In addition, I ask that the Court determine whether apportionment of restitution with the separately charged co-conspirator is appropriate.

    I attach for the Court's consideration in connection with sentencing: Letter of Samuel Barrolle (Ex. A); Letter of Sandra Barrolle (Ex. B); Letter of Regina L. McKenzie (Ex. C); Letter of Richard Reid (Ex. D); Letter of Iheanyi Opara (Ex. E).

### I. Objections to the Pre-Sentence Report

    I submitted each of these objections to Probation in February; thus far no amended PSR has been issued, so I include them here.

    First, in paragraph 51, it states that there is no record of Mr. Barrolle's attendance at the Borough of Manhattan Community College. I submitted to Probation a copy of his diploma to verify his attendance and degree.

    Second, in paragraph 55, it states that Probation was not able to find a listing for the Recreation Center where Mr. Barrolle works as a personal trainer. I submitted to Probation a listing for the Hansborough Recreation Center from the Parks & Recreation website.

    Third, in paragraph 55, it states that Probation was unable to find a listing for the construction company for which Mr. Barrolle has worked part-time since 2003. As I informed

-2-

```
William H. Pauley III                           July 29, 2008
U.S. District Judge                             Page 3
Southern District of New York
```

    **Re: <ins>United States v. Samuel Barrolle</ins>**
         **<ins>07 Cr. 342 (WHP)</ins>**

Probation, it is: 1Con Construction, Inc. 101 Wayne Avenue, Trenton, NJ 08618, 609-815-3998.

    Fourth, in the "Justification" section of the Pre-Sentence Report ("PSR"), it states that Mr. Barrolle placed "unsuspecting individuals in a position where they could be arrested and prosecuted for tax fraud." PSR, at 19. There is nothing about this case that indicates that the individuals that returned over and over again to Hirank to receive large tax returns based on false deductions were unsuspecting. This is not a case where people were being taken advantage of; it is far more likely they chose Hirank specifically to receive larger refunds than those to which they were legally entitled.

## II. Factual Background

    In the six and one-half years since he voluntarily withdrew from the offense conduct, Samuel Barrolle has had no trouble with the law, and has succeeded in building a life focused on his family and marked by hard work. His assistance in the preparation of false tax returns was uncharacteristic conduct for a man who has been steadily and lawfully employed since he was 16 years old, has never used any drugs or alcohol, and has no criminal history. The offense was committed in a very particular context: Mr. Barrolle was desperate to have a steady, non-menial job because his younger brother was suffering from worsening multiple sclerosis, and needed financial support and help going to medical appointments; Mr. Barrolle began working at this tax preparation business run by a man who turned out to be preparing false returns and instructed Mr. Barrolle to do the same; Mr. Barrolle agreed to do so out of fear of losing this job because of his brother's situation. Mr. Barrolle voluntarily withdrew from the conspiracy over four years prior to learning of any investigation. When he did learn of an investigation, his first instinct was to call the prosecutor to discuss the case, then to enter into a tolling agreement, which allowed this prosecution to go forward, and finally to plead guilty in a speedy and full manner.

    Samuel Barrolle was born in 1968, in Liberia, the second of four children. His parents worked for the government of Liberia,

William H. Pauley III                           July 29, 2008
U.S. District Judge                             Page 4
Southern District of New York

    Re:  **United States v. Samuel Barrolle**
          **07 Cr. 342 (WHP)**

and decided to emigrate to the United States during a period of great civil unrest in Liberia. The family first relocated to Maryland, and eventually settled in New York. His parents had a difficult time finding work commensurate with their education and abilities, so the children began working while still in high school to help support the family. At age 16, Mr. Barolle found a job at the Jacob Javits Convention Center. He joined the Exhibition Employees Union and worked long hours setting up conventions and trade shows. This had a negative impact on his ability to attend and concentrate at school, and he eventually dropped out of high school. However, knowing the importance of education, he returned, and graduated from Martin Luther King, Jr. High School in Manhattan in 1990, at age 22. After graduating, he continued working hard at the Javits Convention Center, and finally saved enough money to rent his own apartment. He met his wife, Mamie Burphy, and they stayed together for four years, until their differences tore them apart. Always strong in math, he took classes part-time at Hunter College for several years, and also began studying accounting at the Borough of Manhattan Community College. Mr. Barrolle received an associate's degree in accounting in 1994.

    Mr. Barrolle met the mother of his two children, Alphelia Saylee, in 1996. Their older daughter, Sammelia, is now 10, and their younger daughter, Samiah, is now eight. Although Mr. Barrolle and Ms. Saylee have separated, they maintain a close relationship and he sees his daughters often. He pays voluntary child support and pays his daughters' tuition at Sacred Heart Catholic School.

    In late 1999, Mr. Barrolle finally found an opportunity to work in a non-menial setting and use his accounting skills. Through a mutual friend, he met a man named Joseph Ighodaro (CC-1 in the Indictment and PSR), who owned a small tax return preparation service in Manhattan and needed an employee. Ighodaro hired Mr. Barrolle to assist in the preparation of tax returns, at a salary of $250 a week. Ighodaro showed Mr. Barrolle how to fill out the forms. At first, Mr. Barrolle did not realize that Ighodaro was telling him to do false returns, but he soon understood that the deductions were fraudulent. He was afraid that if he refused to do the forms in the way Ighodaro

William H. Pauley III                              July 29, 2008
U.S. District Judge                                 Page 5
Southern District of New York

    **Re: <u>United States</u> v. <u>Samuel Barrolle</u>**
        **07 Cr. 342 (WHP)**

wanted them, he would lose his job.  This was at a time when Mr. Barrolle's younger brother, Marcus, who had been diagnosed with multiple sclerosis a couple of years before, had become so ill that he was no longer able to work.  Marcus lived with Mr. Barrolle and they shared the rent and other expenses.  Mr. Barrolle was desperate to keep this new job so that he could support Marcus financially.  He knew what they were doing was tax fraud, and that it was wrong.  But he was consumed with fear over his brother's condition, acting as his primary caretaker and taking him from doctor to doctor. <u>See</u> Letter of Sandra Barolle (Ex. B). Marcus was hospitalized repeatedly during this period.  Because of his brother's situation, and Mr. Barrolle's fear that he would not be able to find another good job, due to his inexperience, he assisted in the preparation of the tax returns as Ighodaro requested. <u>See</u> Letter of Samuel Barrolle (Ex. A).

    Finally, in early 2002, Mr. Barrolle had enough.  He could no longer bear being involved in this wrongful conduct.  He and his brother moved in with their sister in New Jersey so that she could help with Marcus's care and support.  He left Ighodaro's employ and took two jobs, as a personal trainer and doing construction, to help pay his and his brother's bills, including supporting his own children and helping his brother with medical expenses.  Mr. Barrolle stopped engaging in criminal conduct not because of any investigation or questions being asked but because of his own moral sense.  He stopped even though he had to return to menial jobs, working long hours as a parking valet, in construction, and as a personal trainer.  The letters written by the people with whom Mr. Barrolle has worked during the years since he left Hirank reflect that he is diligent and responsible. <u>See</u> Exhibits C-E.

    Marcus's condition continued to worsen, and he was no longer able to feed himself or to walk.  Mr. Barrolle acted as his main caretaker, with the assistance of his sister and other family members, while working as steadily as he could.

    In late 2006, Mr. Barrolle learned for the first time of an investigation into Hirank and the tax returns.  When he received a letter regarding the investigation, he called the prosecutor whose name was on it, John Kane, so that he could speak with him

William H. Pauley III                              July 29, 2008
U.S. District Judge                                 Page 6
Southern District of New York

**Re: <u>United States v. Samuel Barrolle</u>**
     **07 Cr. 342 (WHP)**

as soon as possible.  He was advised by the case agent to retain a lawyer, so he did so.  In January 2007, he entered into a tolling agreement with the Government, which allowed the prosecution to proceed despite the statute of limitations.

In March 2007, his brother Marcus died, at the age of 36. On May 15, 2007, Mr. Barrolle was arrested on an indictment charging him with assisting in the preparation of fraudulent tax returns from 1999 to 2002.  He was released on bail.  He has been in perfect compliance with the terms of his release.  On August 22, 2007, he pleaded guilty to Counts 1, 3, 4, 5, 10, 11, 16, 17, 18, and 19 of the Indictment.

The co-conspirator, Mr. Barrolle's employer, Joseph Ighodaro, was separately charged on August 8, 2007. 07 Cr. 759. On September 11, 2007, Ighodaro pleaded guilty to a two-count information, including a count of conspiracy that encompasses the conspiracy conduct to which Mr. Barrolle pleaded guilty. Ighodaro's case has now been transferred to Your Honor and they are set to be sentenced on the same day.

### III. <u>Applicable Sentencing Law</u>

When imposing sentence, the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a) in determining what is a reasonable sentence in each individual case. <u>See</u> <u>United States v. Booker</u>, 543 U.S. 220 (2005); <u>see also</u> <u>United States v. Fernandez</u>, 443 F.3d 19 (2d Cir. 2006).

Section 3553(a) directs the Court to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."  Section 3553(a)(2) states that such purposes are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

William H. Pauley III                           July 29, 2008
U.S. District Judge                             Page 7
Southern District of New York

     **Re:  United States v. Samuel Barrolle**
          **07 Cr. 342 (WHP)**

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

To arrive at such a sentence, the Court is further directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a)(1), (a)(3)-(7).

The Guidelines range is but one of many factors set forth in 18 U.S.C. § 3553(a) that a district court is to consider when imposing sentence. See Booker, 543 U.S. 220. The Supreme Court recently emphasized that the Guidelines are not presumptive and that even a district court's disagreement with the policy considerations of the Guidelines is a legitimate basis for sentencing below a given range. See Gall v. United States, 128 S.Ct. 586 (Dec. 10, 2007) (upholding a district court's sentence of probation in a case involving the distribution of over 10,000 pills of ecstacy where the Guidelines' range was 30-37 months); Kimbrough v. United States, 128 S.Ct. 558 (Dec. 10, 2007) (upholding a district court's decision to sentence a defendant below the Guidelines range based on a disagreement with the Guidelines' policy of treating the distribution of crack cocaine more severely than powder cocaine). Indeed, in Kimbrough, the Government conceded that "'courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines.'" Id. at 570. In every case, the sentencing court "must make an individualized assessment based on the facts presented." Gall, 128 S.Ct. at 597.

Of particular relevance to the facts of this case, the Supreme Court in Gall stressed the relevance at sentencing of a defendant's voluntary withdrawal from a conspiracy, a circumstance that it said "distinguished his conduct" . . . "from the vast majority of defendants convicted of conspiracy in

William H. Pauley III                          July 29, 2008
U.S. District Judge                            Page 8
Southern District of New York

      **Re:  United States v. Samuel Barrolle**
           **07 Cr. 342 (WHP)**

federal court," and "lends strong support" to the "conclusion that [the defendant] is no going to return to criminal behavior and is not a danger to society."  128 S.Ct. at 600; see also id. at 602.

### IV.  Any Term of Imprisonment Would Be Greater Than Necessary To Deter Mr. Barrolle, Continue His Rehabilitation, And Promote Respect For The Law

    The only statutory factor weighing in favor of an incarcerative sentence is the advisory Guidelines; each of the other factors weighs strongly against incarceration and in favor of a probationary sentence.  Indeed, Mr. Barrolle is similarly situated to the defendant in the recent Supreme Court decision in Gall upholding the sentence and reasoning of the sentencing judge in imposing a non-Guidelines sentence of probation:

> "Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who ... understands the consequences of his criminal conduct and is doing everything in his power to forge a new life.  The Defendant's post-offense conduct indicates neither that he will return to criminal behavior nor that the Defendant is a danger to society.  In fact, the Defendant's post-offense conduct was not motivated by a desire to please the Court or any other governmental agency, but was the pre-Indictment product of the Defendant's own desire to lead a better life."

552 U.S. __ , 128 S.Ct. at 593 (quoting the district court opinion), see also id. at 602 ("The District Court quite reasonably attached great weight to Gall's self-motivated rehabilitation, which was undertaken not at the direction of, or under supervision by, any court, but on his own initiative.  This also lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts.

William H. Pauley III                          July 29, 2008
U.S. District Judge                            Page 9
Southern District of New York

    **Re: <u>United States v. Samuel Barrolle</u>**
         **07 Cr. 342 (WHP)**

See 18 U.S.C. §§ 3553(a)(2)(B), (C)." ).

    Mr. Barrolle's history and characteristics show that he is capable of living a law-abiding life – as he has been for the last six years. He consistently has worked two to three jobs to support himself and his family. He devoted much of the last six years to caring for his brother, until his brother's death just two months before this Indictment. He is a loving and supportive father to his two daughters. He now also helps to support his brother's two sons. He has never used any drugs or alcohol. This is his only contact with law enforcement.

    The offense conduct occurred in an entirely different context. Mr. Barrolle's brother's multiple sclerosis had begun to worsen when Mr. Barrolle was offered the opportunity to work for Ighodaro preparing tax returns, a job that seemed both a step-up professionally and to allow a more flexible schedule within which to take his brother to medical appointments. Mr. Barrolle did not receive a cut of the tax returns or refunds or any sort of bonus for preparing inaccurate returns. He got to keep his job, and the $250 per week salary he earned. Despite his desire for stability and an escape from manual labor, Mr. Barrolle left Hirank, moved back in with his family, and returned to menial employment. He did so over four years before he learned of any investigation into the tax returns.

    Mr. Barolle has shown his remorse not only through how he has lived in the years since the offense conduct, but also in the manner he dealt with this investigation and prosecution. He responded immediately to the Government's letter. He entered into a tolling agreement which permitted the prosecution of conduct now almost nine years old. He pled guilty speedily.

    The Court has the authority to sentence Mr. Barolle to a lengthy probationary sentence with a community service requirement. Such a sentence will allow Mr. Barrolle to continue to work hard, to pay the restitution, and to support his two children. It will simultaneously permit this Court to ensure – through supervision – that Mr. Barrolle does not fall prey to temptation again.

```
William H. Pauley III                              July 29, 2008
U.S. District Judge                                Page 10
Southern District of New York
```

  **Re: <u>United States</u> v. <u>Samuel Barrolle</u>**
    **07 Cr. 342 (WHP)**

  Incarcerating Mr. Barrolle would mean the imprisonment of someone who poses no risk of recidivism, who has evinced remorse, and who has already been punished significantly by a felony conviction that will keep him from ever moving out of menial employment, prevent him from serving on a jury or voting.

  The Sentencing Guidelines, which in this case advise a sentence of 30 to 37 months, based on the total tax loss for returns prepared by both Mr. Barrolle and his employer, do not take into consideration Mr. Barrolle's voluntary withdrawal, his post-offense rehabilitation over a lengthy period, his cooperation with the government by signing a tolling agreement, or the family circumstances in which this offense conduct arose, all of which bear directly on the sentence necessary to punish, deter, and rehabilitate this particular defendant.

  A probationary sentence would not cause an unwarranted sentence disparity, given the particular characteristics of this defendant and this offense conduct. Tax fraud convictions are susceptible to a wide range of sentences, based on the particular nature of the defendants. For example, the owners of Cipriani restaurant were recently sentenced for a $10 million dollar tax fraud. The son, Guiseppe, received a three year probationary sentence for this multi-million dollar fraud. The father received a conditional discharge. In this district, Judge Cote recently imposed a probationary sentence in a tax fraud case bearing a higher advisory Guidelines range, of 37 to 46 months, based on a combination of circumstances, including the defendant's family responsibilities and her post-offense rehabilitation, where the defendant, unlike Mr. Barrolle, stopped her preparation of false tax returns only when she learned she was under investigation by the IRS. <u>United States v. Octavia Manigault</u>, 07 Cr. 951 (DLC).

  The Supreme Court in <u>Gall</u> recognized that although custodial sentences are "qualitatively more severe than probationary sentences," "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty," for example, "Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the

William H. Pauley III                    July 29, 2008
U.S. District Judge                      Page 11
Southern District of New York

     **Re:  United States v. Samuel Barrolle**
          **07 Cr. 342 (WHP)**

court.  They must report regularly to the their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking." 128 S.Ct. at 595-96 (internal citations omitted).

     In this particular case, the substitution of a requirement of community service for any imprisonment seems appropriate.  Mr. Barrolle is an intelligent man with an interesting background.  He is also a skilled physical trainer and home builder.  He would contribute a great deal at a youth center, a prison math class (the MCC, for example, is desperate for volunteers to teach math and computers), or an inner city building project.  Such a requirement would remind Mr. Barrolle of the seriousness of his conduct, but would also further the purpose of general deterrence, so that the people he serves realize the consequences of such offense conduct.

     A probationary sentence would also permit Mr. Barrolle to begin paying restitution immediately.  The restitution obligation in this case is a large one, $570,000, and even if the Court determines that apportionment is appropriate, Mr. Barrolle will be responsible for a substantial amount relative to his earnings.  The requirement to pay such a large amount will itself serve as an additional punishment and deterrence to Mr. Barrolle.

## V.  Restitution

     Mr. Barrolle asks the Court to consider whether his lesser culpability for the loss suffered by the IRS, as well as the lesser profit he received from the scheme, warrants apportionment of restitution between him and Joseph Ighodaro, the owner and President of Hirank, who was separately charged with this conspiracy, 07 Cr. 759.

     The restitution statute explicitly specifies the relative degree of responsibility of a defendant for a victim's loss as a factor the sentencing court may consider in determining restitution.  When more than one defendant contributed to the losses of a victim, the Court may impose joint and several liability for the full amount of restitution or may apportion

William H. Pauley III                          July 29, 2008
U.S. District Judge                             Page 12
Southern District of New York

    **Re:  United States v. Samuel Barrolle**
         **07 Cr. 342 (WHP)**

liability among the defendants "to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). The sentencing court has wide discretion as to whether or not to apportion restitution liability, and what apportionment is appropriate. United States v. Nucci, 364 F.3d 419, 422 (2d Cir. 2004); United States v. Boyd, 222 F.3d 47, 50 (2d Cir. 2000).

    While restitution compensates the victims, it is also a component of punishment and this aspect of a defendant's punishment, like all the others, should be tailored to "fit the offender and not merely the crime." Williams v. New York, 337 U.S. 241, 241 (1949). Accordingly, in United States v. Anglian, the Sixth Circuit upheld a restitution order requiring that two of nine co-conspirators bear one-half of the total loss caused by the scheme and dividing the other half of the loss into seven parts, apportioned equally among the remaining indicted and unindicted co-conspirators, where the sentencing court had found that two of the co-conspirators had "the primary responsibility" for the offense and influenced the younger members of the conspiracy. 784 F.2d 765, 767 (6th Cir. 1986).

    Here, Ighodaro both bore greater responsibility for the loss and appears to have more financial resources than Mr. Barrolle. Mr. Barrolle followed the instructions of his employer, Ighodaro, who owned the tax preparation business and was already committing tax fraud when Mr. Barrolle was hired. It was Ighodaro who devised the method of tax fraud. Ighodaro paid Mr. Barrolle $250 a week and took all other profits of the business for himself. With respect to his current financial situation, Mr. Barrolle works steadily but his only asset is a property valued at $12,000. I do not have information concerning either the amount of profit Ighodaro derived from the scheme nor Ighodaro's financial situation, other than the fact that Ighodaro has retained counsel, indicating that he is not indigent, unlike Mr. Barrolle. Both the amount of profits derived by each defendant and their current financial situations are relevant factors set forth in the restitution statute. 18 U.S.C. § 3664(h).

    Accordingly, Mr. Barrolle asks that the Court consider apportionment of restitution to reflect Ighodaro's greater level

William H. Pauley III                           July 29, 2008
U.S. District Judge                             Page 13
Southern District of New York

     **Re:  <u>United States v. Samuel Barrolle</u>**
          **07 Cr. 342 (WHP)**

of responsibility and greater financial resources, but, at the least, impose joint and several restitution.

In addition, if the Court orders restitution, Mr. Barrolle respectfully requests that the Court waive the requirement of interest pursuant to Title 18 U.S.C. §3612(f)(3), otherwise, interest begins to accrue fifteen days after judgment. A waiver of interest would enable Mr. Barrolle to repay the amount without the overwhelming burden of interest compounded daily, which he does not have the financial ability to pay. (Title 18 U.S.C. §3612(f) provides that interest accrues daily on the unpaid balance of an amount to be paid in restitution).

## VI. <u>No Fine Is Warranted</u>

Probation recommends a $6000 fine. No fine is warranted here, where Mr. Barrolle must pay a large restitution amount and a $1000 special assessment, and is indigent. <u>See</u> U.S.S.G. § 5E1.2(a),(e); <u>see also</u> U.S.S.G. § 5E1.2, App. Note 3 (the fact that a defendant is represented by assigned counsel is a significant indicator of present inability to pay any fine).

## VII. <u>Conclusion</u>

We ask that the Court consider all of these factors – along with its own sense of what would constitute a fair and just sentence – in determining the appropriate sentence for Mr. Barrolle. <u>See</u> <u>United States v. Jones</u>, 460 F.3d 191, 195 (2d Cir. 2006) (noting that a sentencing judge may consider his or her own sense of what would constitute a fair and just sentence under all the circumstances, so long as all of the 3553(a) factors are taken into account). No term of imprisonment is needed to deter, rehabilitate or punish Mr. Barrolle. He will not commit future crimes, he has rehabilitated himself, and he is very aware of the wrongfulness of his conduct, its seriousness, and the impact of such behavior on the American Government and fisc.

```
William H. Pauley III                           July 29, 2008
U.S. District Judge                             Page 14
Southern District of New York
```

    **Re:  United States v. Samuel Barrolle**
        **07 Cr. 342 (WHP)**

```
                                Respectfully Submitted,

                                Deirdre D. von Dornum
                                Assistant Federal Defender
                                (718) 330-1208

cc:      John N. Kane, Assistant U.S. Attorney (via ECF)
         Katrina Minus-Shepherd, U.S. Probation Officer (via
              facsimile)
         Samuel Barrolle (via U.S. Mail)
```