

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrews Plaza
New York, New York 10007

August 7, 2008

<u>Via Hand Delivery</u>
The Honorable William H. Pauley, III.
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

                 Re:    <u>United States v. Samuel Barrolle</u>
                          07 Cr. 342 (WHP)

Dear Judge Pauley:

      We submit this letter in response to defendant's sentencing memorandum filed last week. For the reasons set forth below, the points and authorities advanced by the defendant, in seeking a term of probation in lieu of incarceration, are accounted for within the Sentencing Guideline range and do not support a non-guideline sentence pursuant to 18 U.S.C. § 3553(a) in this case.

**I.**       **Standard For Sentencing**

      The defendant does not cite the Second Circuit's decision in <u>United States v. Cutler</u>, 520 F.3d 136 (2d Cir. 2008), a tax and bank fraud case, which provides the latest and most exhaustive analysis of the Supreme Court's post-<u>Booker</u> sentencing jurisprudence, and presents for this Court the controlling framework within which it must sentence defendant Barrolle.

      The holding of <u>Cutler</u> is that, to the extent the factors relied upon by the defendant in seeking a non-Guideline sentence are already accounted for within the Sentencing Guidelines and policy statements of the Commission, the Court may still issue a non-Guideline sentence in its discretion, but must explain on the record its disagreement with the policy judgments of Congress and the Sentencing Commission, or their application in this case.

      In <u>Cutler</u>, two defendants were convicted of tax fraud and bank fraud. Based, in part, upon a tax fraud loss of over $5 million, the PSR determined the applicable offense level for Cutler under the Sentencing Guidelines to be 28, resulting in a Sentencing Guideline range of 60-78 months. Co-defendant Freedman's Guideline range was 108-135 months.

Both moved for Guideline departures, as well as for a non-Guideline sentence pursuant to section 3553(a), based upon: (1) extraordinary family circumstances; (2) the claim that the loss amount overstates the culpability of the defendants; (3) the assertion that given the "type" of offenses, the length of sentence is not important in providing deterrence; (4) the public nature of the prosecution, as well as the hardship of being prosecuted, provided sufficient punishment; and (5) if the defendants are in prison, they will not be able to pay restitution. The district court granted the defendants requests. Cutler received a one-year sentence. Freedman received probation.

Importantly, the district court based its sentence not only upon motions for departures within the Guidelines, but also upon section 3553(a) factors. Cutler, 520 F.3d at 149. Accordingly, the Second Circuit had occasion to address the sentencing factors under section 3553(a), as well as pursuant to the Guideline departure provisions.

The Second Circuit reversed and vacated the sentence based upon its analysis of Supreme Court sentencing jurisprudence in the wake of United States v. Booker, 543 U.S. 220 (2005). Acknowledging that the Guidelines are advisory, the Second Circuit reiterated that

> district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.

Cutler, 520 F.3d at 155 (quoting Gall v. United States, – U.S. – , 128 S. Ct. 586, 597 n.6 (2007)).

In Cutler, the Second Circuit went on to state that courts may vary from Guideline ranges – even based solely on policy considerations and disagreements with the Guidelines. Cutler, 520 F.3d at 155. However, if courts so deviate, they must explicitly state the basis for their disagreement with the Guideline calculation. Quoting the Supreme Court, the Second Circuit further held:

> If [the sentencing judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance . . . . [A] major departure should be supported by a more significant justification than a minor one.

Cutler, 520 F.3d at 156 (quoting Gall, 128 S.Ct. at 594).

On appellate review, while the Guidelines are not binding, the Second Circuit will review more closely any variance from the Guidelines based solely upon the judges's view that the Guidelines range "fails to properly reflect § 3553(a) considerations." Cutler, 520 F.3d at 156 (quoting Kimbrough, 128 S.Ct. at 575).

II.   **Incarceration Consistent With The Guideline Range Is Appropriate And Reasonable In This Case**

    1.   **Section 3553(a)(4):  The Guidelines**

As Cutler holds, the starting point for analysis is the Guideline range, and the Court must remain cognizant of the Guidelines throughout sentencing. The reason the Guidelines must be the

benchmark throughout sentencing is a compelling one: the Guidelines are the product of careful study based upon extensive empirical evidence derived from the review of thousands of individual sentencing decisions, and incorporate in most instances the same factors outlined in 18 U.S.C. § 3553(a). Cutler, 150 F.3d at 155 (citing Kimbrough v. United States, — U.S. —, 128 S.Ct. 558 (2007)). Indeed, the Guidelines cannot be called just "another factor" in the statutory list because they are the only integration of multiple factors outlined in section 3553(a), and their calculations represent the collective determination of three governmental bodies – Congress, the Judiciary, and the Sentencing Commission. United States v. Rattoballi, 452 F.3d 127, 133 (2d Cir. 2006).

The PSR concludes that the applicable Guideline range is 30 to 37 months of incarceration. Defendant does not dispute this calculation, and does not seek a Guidelines departure.

> **2.    Section 3553(a)(2): A Term Of Incarceration Will Appropriately Reflect The Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Deter Criminal Tax Conduct**

Section 3553(a)(2) requires consideration, among other things, of the need for a sentence to be imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Section 3553(a)(2)(B) provides that the Court must consider the need for the sentence imposed to "afford adequate deterrence to criminal conduct." Thus, general deterrence is one of the prescribed goals of every sentencing, United States v. Pugh, 515 F.3d 1179,1194 (11th Cir. 2008), but it occupies an especially important role in sentencing for criminal tax offenses. See United States v. Burgos, 276 F.3d 1284, 1290 (11th Cir. 2001) (observing "[f]or a judge sentencing a defendant convicted of tax evasion, the chief concern may be general deterrence").

Defendant scarcely addresses the need for general deterrence, a primary concern with respect to tax crimes. And, as the Second Circuit held in Cutler, tax crimes in and of themselves are serious crimes, with the degree of culpability adequately and appropriately captured by the tax loss table. Cutler, 520 F.3d at 163.

Indeed, the notion that a non-prison sentence in this case, given the nature of the crimes, would serve deterrence is directly in conflict with Second Circuit law and Sentencing Commission policy statements. According to the Sentencing Commission:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. Ch. 2, Pt. T, Introductory Commentary.

- 4 -

The Second Circuit, relying upon this provision in reversing non-Guideline departures in a tax case, further explained that the tax loss table appropriately gauges the culpability of the defendant, and the appropriate sentence necessary for deterrence. Cutler, 520 F.3d at 163. The Second Circuit further reasoned that the length of a prison term in a tax case is especially related to the need for deterrence. Id. Although a district court is entitled to disagree with the Sentencing Commission's policy statements as applied in a particular case, it must give an explanation for its disagreement. As the Circuit has held:

> Here, the court gave no explanation for its disagreement with the Commission's policy judgements, reflected in the Guidelines as explained in the background commentary, that tax offenses, in and of themselves, are serious offenses; that the greater the tax loss, the more serious the offense; and that the greater the potential gain from the tax offense, the greater the sanction that is necessary for deterrence.

Cutler, 520 F.3d at 163.

A non-Guideline sentence in this case, let alone a probationary sentence, would send an unwanted message to the community, and would undermine deterrence. Most taxpayers are law abiding citizens who file their tax returns and pay their taxes as required by law. To show leniency to this defendant after his conspiracy to defraud the United States, and after he caused a substantial tax loss to the United States, may invite tax scofflaws to evade their tax obligations.

3.  **Section 3553(a)(1): Nature And Circumstances Of The Offense, and the History Of And Characteristics Of This Defendant Call For Incarceration Consistent With The Guidelines**

As noted above, tax crimes are serious crimes in and of themselves. That this defendant falsified numerous returns for his own profit, causing a tax loss to the United States of $570,000, demonstrates that the nature and circumstances of the offense call for a term of imprisonment.

One of the centerpieces of the defendant's request for a non-Guideline sentence is the claim that he was the less culpable of the two co-conspirators in the scheme. Defendant's Sentencing Memorandum ("Def.'s Mem.") at 3, 4-5, 9, 11-12. However, we note that of the numerous falsified returns that were part of the scheme, defendant Barrolle prepared the vast majority of them. Specifically, approximately $375,000 of the total $570,000 tax loss is attributable to returns identifying Barrolle as the preparer.

In addition, Ighodaro disputes defendant Barrolle's claim that the tax fraud was Ighodaro's idea. Ighodaro has reported that it was Barrolle's idea to falsify returns. Ighodaro hired Barrolle as a preparer and, according to Ighodaro, Barrolle initially falsified his returns without Ighodaro's knowledge. Barrolle appeared to be bringing in many clients, and explained to Ighodaro that the business could generate more clients if substantial refunds from the IRS could be generated on behalf of clients.

However, the Court need not resolve which version is true because, regardless of whose idea it was, Barrolle's role in committing the offense was just as substantial as Ighodaro's – even if it was

Ighodaro's idea. Barrolle has admitted to preparing the returns, and has admitted to causing a tax loss of $570,000 through the preparation of false returns – the majority of which were prepared by him.[1]

### III. Restitution

Defendant requests that the Court apportion restitution between Ighodaro and Barrolle based upon their respective degrees of culpability. Reiterating arguments made against incarceration, defendant Barrolle claims that it was Ighodaro's idea to falsify tax returns, and that he, Barrolle, only followed the instructions of his employer. Def.'s Mem. at 12.

For the reasons discussed above, defendant has not shown a lesser degree of culpability than Ighodaro. To the contrary, defendant prepared more false tax returns than Ighodaro. In addition, Ighodaro's statements rebut Barrolle's claims that he was just following Ighodaro's direction.

Finally, regardless of who initiated the scheme, Barrolle has admitted to participating fully in scheme that caused the victim here – the IRS – to lose $570,000 in tax revenue. Indeed, he prepared more false returns than his co-conspirator. In these circumstances, joint and several liability for restitution between Ighodaro and Barrolle is appropriate in order to provide the greatest chance that the government will be made whole.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:   */S/ John N. Kane, Jr.*
JOHN N. KANE, JR.
Special Assistant United States Attorney
(202) 353-9716

cc:   Deirdre von Dornum, Esq.
      USPO Katrina Minus-Shepard

---

[1] The defendant has also overstated his degree of cooperation pre-indictment. Although it is true that he gave up rights to be charged within a certain period of time, it is not true that the tolling agreement "allowed the prosecution to proceed despite the statute of limitations." Def.'s Mem. at 6. The grand jury indicted the defendant on April 25, 2007, less than six years after the last overt act alleged in Count One of the indictment – and, thus, within the statute of limitations regardless of the tolling agreement. Indictment ¶ 7(k). Likewise, Counts 4, 5, 11, 17, and 19 – to which Barrolle pleaded guilty – were all filed within the original six-year statute of limitations period.